JUDGE BERMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERNESTO ALVAREZ,<br><br>                    Defendant. | SEALED INDICTMENT<br><br>25 Cr.<br><br>**25 CRIM 464** |

## COUNT ONE
(Conspiracy to Commit Bank Fraud)

The Grand Jury charges:

### OVERVIEW

1.  ERNESTO ALVAREZ, the defendant, was the Chief Executive Officer of a business located in Miami, Florida that bought and sold coffee ("Company-1"). From at least in or about 2015 through at least in or about 2020, ALVAREZ agreed with others to engage in a scheme to defraud financial institutions and obtain money in the custody of those financial institutions. In furtherance of the scheme, ALVAREZ and others made and caused to be made false representations that funds drawn on lines of credit held by Company-1 at certain financial institutions would be used by Company-1 to finance the purchase of coffee. In fact, and unbeknownst to the financial institutions, the funds were used to pay amounts owed by a separate business owned in part by ALVAREZ's brother ("Company-2"). During the scheme, ALVAREZ caused Company-1 to make a total of approximately 90 such fraudulent advance requests, which resulted in financial institutions advancing over $83 million and ultimately causing losses of over $8 million.

## RELEVANT ENTITIES AND INDIVIDUALS

2. At all times relevant to this Indictment, Company-1 was in the business of purchasing coffee from coffee growers and selling coffee to major coffee suppliers. Company-1 was owned by ERNESTO ALVAREZ, the defendant, and another individual ("Individual-1").

3. At all times relevant to this Indictment, Company-2 was a Panamanian corporation that also operated in the coffee industry. Company-2 was owned and controlled by a brother of ERNESTO ALVAREZ, the defendant, and a brother of Individual-1.

4. At all times relevant to this Indictment, ERNESTO ALVAREZ, the defendant, was a partial owner of Company-1, as well as its Managing Director and Chief Executive Officer.

## THE FRAUD SCHEME

5. At all times relevant to this Indictment, Company-1 maintained lines of credit with certain financial institutions, which it used in the ordinary course of its business to finance its purchase of coffee for resale. In general, under the terms of its credit agreements with such financial institutions, which typically were signed by ERNESTO ALVAREZ, the defendant, Company-1 was obligated to use funds advanced by the financial institutions pursuant to the lines of credit to purchase coffee. The coffee purchased with the advanced funds served as collateral for the loans.

6. Company-2, a separate company from Company-1, maintained a trading relationship with a multinational food corporation ("the Food Corporation"). Pursuant to that relationship, Company-2 and the Food Corporation entered into commodity swap contracts. Such contracts are used by market participants as a hedge against price swings in the market for a particular commodity, in this case, coffee. Under the agreements between Company-2 and the Food Corporation, the Food Corporation was entitled to make margin calls (*i.e.*, demands for

payment) on Company-2 in certain circumstances, depending on, for example, movements in the market price for coffee.

7.  Beginning in or around 2016, Company-1 entered into written agreements with the Food Corporation pursuant to which Company-1 agreed to act as a guarantor for Company-2 by guaranteeing to pay amounts owed by Company-2 to the Food Corporation in the event that Company-2 did not promptly make such payments. ERNESTO ALVAREZ, the defendant, signed these guarantee agreements on behalf of Company-1.

8.  From at least in or about 2015 and continuing through at least in or about 2020, Company-1, at the direction of ERNESTO ALVAREZ, the defendant, repeatedly used its lines of credit with certain financial institutions to cover margin calls made by the Food Corporation on Company-2. In order to do so, Company-1, at the direction of ALVAREZ, repeatedly submitted false loan requests and supporting documentation to the financial institutions, which materials purported to show that the funds advanced by the financial institutions would be used to finance the purchase of coffee. Thereafter, the financial institutions wired funds to bank accounts specified by Company-1, which bank accounts, unbeknownst by the financial institutions, were held by the Food Corporation rather than by coffee growers, and which transactions in some instances involved financial institution employees located in the Southern District of New York and wires into or out of the Southern District of New York.

9.  For example, on or about February 4, 2020, an employee of the Food Corporation emailed, among others, ERNESTO ALVAREZ, the defendant, requesting payment of $8.88 million to cover a margin call on Company-2. ALVAREZ responded to the Food Corporation, stating, in substance and in part, that Company-1 would cover the margin call. During the next several days, Company-1 fraudulently obtained approximately five advances from financial

institutions totaling at least $8 million, which advances it caused the financial institutions to wire directly to the Food Corporation. To support the advance requests, Company-1 provided false documentation, including false purchase orders purporting to show the purchase of coffee, and false advance request forms stating, in substance and in part, that advanced funds would be used to finance the purchase of coffee and including wire instructions directing payment to a bank account held by the Food Corporation in New York but in many instances omitting any reference to the Food Corporation.

10. In addition, in furtherance of the scheme, ALVAREZ signed letters to Company-1's external auditor that did not disclose Company-1's guarantees to pay amounts owed by Company-2 to the Food Corporation.

## STATUTORY ALLEGATIONS

11. From at least in or about 2015 through at least in or about 2020, in the Southern District of New York and elsewhere, ERNESTO ALVAREZ, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

12. It was a part and an object of the conspiracy that ERNESTO ALVAREZ, the defendant, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, ALVAREZ agreed to make and caused to be made false representations

to financial institutions that funds drawn on certain lines of credit held by Company-1 would be used by Company-1 to purchase coffee when such funds in fact were used to pay amounts owed by Company-2 in connection with financial transactions entered into by Company-2.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Bank Fraud)

The Grand Jury further charges:

13. The allegations contained in paragraphs 1 through 10 of this Indictment are repeated and realleged as if fully set forth herein.

14. From at least in or about 2015 through at least in or about 2020, in the Southern District of New York and elsewhere, ERNESTO ALVAREZ, the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, ALVAREZ engaged in a scheme to make false representations to financial institutions that funds drawn on certain lines of credit held by Company-1 would be used by Company-1 to purchase coffee when such funds in fact were used to pay amounts owed by Company-2 in connection with financial transactions entered into by Company-2.

(Title 18, United States Code, Sections 1344 and 2.)

## FORFEITURE ALLEGATION

15. As a result of committing the offenses alleged in Counts One and Two of this Information, ERNESTO ALVAREZ, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

16. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney